# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY W. MCCOY,

**Plaintiff,**

v.

**Case No. 1:04-cv-101**
**(Chief Judge Keeley)**

UNITED STATES OF AMERICA,

**Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On November 25, 2003, plaintiff filed a document titled "After Denial of Appeal No.: 02-1388 & No.: 02-1389 Movant Brings a Motion Requesting Leave of the Court to Seek Judicial Review of FOIA/PA Appeal Denial Pursuant to U.S.C. Section 552(a)(4)(B)" in his criminal case. See 1:92-cr-189 at Doc. 187. The Court construed that request as a civil rights complaint and directed the Clerk to open a civil case in plaintiffs' behalf. Id. at Doc. 189. Pursuant to that Order, the instant case was opened on May 25, 2004. Plaintiff paid the required filing fee on June 2, 2004 and the defendant was directed to file a response to the complaint. The defendant filed an answer on January 24, 2005, asserting that plaintiff failed to state a claim upon which relief could be granted, that the defendant has not improperly withheld documents, and generally denying that the plaintiff is entitled to relief.

On October 4, 2005, the parties were directed to file dispositive motions by November 3, 2005, and any reply thereto by December 5, 2005. After the granting of an extension of time, the defendant timely filed a Motion for Summary Judgment on November 8, 2005.[1] The plaintiff filed

---

[1] The defendant's motion includes a "Vaughn Index" pertaining to the documents withheld by the DEA. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) (holding that an agency must provide an analysis sufficiently detailed in support of any claimed exemptions).

a reply in the form of his own Motion for Summary Judgment on December 5, 2005. The summary judgment motions were referred to the undersigned by Order entered December 6, 2005.

## I. Plaintiff's Conviction

In 1993, plaintiff was convicted in this Court of operating a continuing criminal enterprise (CCE) and conspiring to manufacture and distribute marijuana. See United States v. McCoy, 188 F.3d 504 (4th Cir. 1999). Plaintiff was also convicted of related crimes, such as money laundering, tax evasion, and suborning perjury. Id. On appeal, the Fourth Circuit Court of Appeals vacated plaintiffs' conspiracy conviction as a lesser-included offense of operating a CCE, and affirmed the remainder of plaintiffs' convictions. Id. This Court denied plaintiff relief under 28 U.S.C. § 2255 and that decision was upheld on appeal. Id.

## II. The Complaint

Not long after the appeal of plaintiffs' § 2255 motion was dismissed, plaintiff discovered that Ronald Shannon Jarvis had been debriefed and given a polygraph examination by an Assistant United States Attorney. In that debriefing and polygraph examination, Mr. Jarvis allegedly exonerated the plaintiff from any involvement in the "Jarvis field of 1992." Moreover, an examination of the polygraph test revealed, and the government therefore conceded, that Mr. Jarvis had been truthful in his answers. Thus, at sentencing, this Court determined that Mr. Jarvis had fully cooperated with the United States prior to sentencing, that his statements made to the United States were truthful, and that he was entitled to receive a "safety valve reduction."

Plaintiff asserts that the information obtained in the polygraph examination, as well as in the debriefing of Ronald Shannon Jarvis, proves that he is actually innocent of the crime for which he

is now incarcerated.[2]  Therefore, plaintiff seeks copies of the transcripts and notes from both the polygraph examination and the debriefing of Ronald Shannon Jarvis.

## II.  Plaintiff's Freedom of Information Act Requests

A.  Request 00-1996 to United States Attorney

After learning of the possible exculpatory evidence contained in Mr. Jarvis' debriefing and polygraph examination, plaintiff attempted to obtain copies of the relevant material by filing a request under the Freedom of Information Act (FOIA) with the United States Attorney's Office for the Northern District of West Virginia.  Plaintiffs' request was forwarded to the Executive Office for the United States Attorneys (EOUSA) and was assigned request number 00-1996.  See Complaint at Attachment (hereinafter Att.) III and IV.  In his  request, Plaintiff specifically asked for information pertaining to:

> (1) The two polygraph examination[s] which were administered to Ronald S. Jarvis on or about Thursday/January 6, 2000, at the (Harrison County Correctional Center), which includes but is not limited to:
>> A. The questions posed to Ronald Jarvis in the two polygraph examination[s].
>> B. The answers of Ronald S. Jarvis to the questions posed in the polygraph[s].
>> C. The results from the two polygraph examination[s].
>> D. Any/all observation[s], report[s], conclusion[s] etc. . .
>
> (2) All FBI 302 Forms concerning the Jarvis field of 1992.

See Complaint at Att. II. (Parentheticals and emphasis in original).  Included with plaintiffs' request was a "privacy waiver" signed by Mr. Jarvis allowing his personal information to be released to the

---

[2] During plaintiff's trial in 1993, Mr. Jarvis was named as a CCE supervisee by the government in its closing argument.  Moreover, the "Jarvis field of 1992" was used by the jury as an element to sustain plaintiff's conviction for conducting a CCE.

plaintiff and an affidavit by Mr. Jarvis stating that he was administered a polygraph examination on January 6, 1999 that contains information confirming that plaintiff had no involvement in the "Jarvis field of 1992." Id. at Exs. A & B.

On December 31, 2001, plaintiff received a response to his FOIA request. In that response, the EOUSA stated that it was releasing four pages of relevant material and withholding zero pages. Specifically, the EOUSA released one page in full and three pages in part. The page that was released in full is unidentifiable because it was copied with what appears to be a post-it note covering the face of the document. The three pages that were released in part combine to form a copy of a report outlining the results of Mr. Jarvis' polygraph examination conducted on January 6, 2000. The information withheld from that document was the name of the investigating officer and the name of the polygraph examiner.

Additionally, the EOUSA noted that there was only one polygraph for Ronald S. Jarvis and that no records showed FBI involvement in the case. However, the EOUSA forwarded plaintiffs' request for FBI 302 forms to the FBI. The FBI assigned plaintiffs' request # 0954045-000 on January 9, 2002. Complaint at Att. VII. On January 22, 2002, the plaintiff was informed that "[a] search of the automated indices to our central records system files at FBI Headquarters revealed no records responsive to your FOIPA request in which you requested all FBI 302 Forms concerning the Jarvis field of 1992." Id. at Att. IX. Plaintiff was advised to file his request directly with the appropriate field offices for an additional check of their records.

Unsatisfied with the response of the EOUSA and the FBI, plaintiff filed a combined appeal to the Office of Information and Privacy in Washington, D.C. In his appeal, plaintiff sought review of the EOUSA's "decision to withhold records in request # 00-1996." Complaint at Att. X.

Specifically, plaintiff "appeal[ed] the withholding[] of various specified documentation withheld pursuant to Section 552(a)/(b)(7)(c)." Id. Plaintiff argued that the withholdings were unwarranted "as § 552(a)/(b)(7)(c) of Title 5 are not applicable provisions for exemptions in request # 00-1996" because Mr. Jarvis signed a release and filed an affidavit. Id. Plaintiff also asserted that the FBI's determination that no relevant records existed could not be accurate as Mr. Jarvis swore that he was debriefed by law enforcement officials while being detained at the Flatwoods North Central Regional Jail and the Harrison County Correctional Center prior to entering his plea.[3]

Plaintiffs' appeal of the decision of the EOUSA was assigned appeal number 02-1388 and his appeal of the decision of the FBI was assigned appeal number 02-1389. Complaint at Att. XII, Ex. 1 and Att. XIII. Plaintiff's FBI appeal was denied on August 12, 2002. Complaint at Att. XIII. The Co-Director of the Office of Information and Privacy found that the FBI's finding that no responsive records could be found was correct. Id. However, the Co-Director noted that this search did not include FBI field offices and that plaintiff would need to contact those offices directly to obtain any records they may have. Id. Plaintiff was also advised that because the case in question involved an Organized Crime and Drug Enforcement Task Force, he may want to file his FOIA request with the Drug Enforcement Agency (DEA). Id.

Plaintiff's EOUSA appeal was denied on September 30, 2002. Complaint at Att. XV. The Co-Director of the Office of Information and Privacy found that because only the names of the law enforcement officers were withheld, the EOUSA properly withheld information protected from disclosure under 5 U.S.C. § 552(b)(7)(c). Id.

---

[3] Specifically, plaintiff asserts that Mr. Jarvis was debriefed by Harold Keith Talbert, an agent of the ATF Division of the FBI, Richard Bennett, a Lewis County Deputy Sheriff assigned to the Drug Task Force Unit in Lewis County, and other unknown named law enforcement officials.

B.  Request 03-0137-F to DEA

Pursuant to the advice of the Co-Director of the Office of Information and Privacy, plaintiff filed a request for information with the DEA. Complaint at Att. XIV, Ex. 1. In that request, plaintiff sent a copy of the original FOIA request he submitted to the EOUSA. Id. Plaintiff also submitted copies of the EOUSA's response to his original request, the FBI's response on referral, his appeal of those responses, and the responses he received to his appeal from the Office of Information and Privacy. Id. Plaintiffs' request was received by the DEA and assigned request number 03-0137-F. Complaint at Att. XVI.

On June 11, 2003, the DEA responded to plaintiffs' request. Complaint at Att. XXI. In that response, the DEA stated that they found 158 pages responsive to plaintiffs' request. Id. The DEA released 77 pages, withheld 67 pages, and referred 14 pages to another agency for review.[4] Id. The exemptions cited for withholding were 5 U.S.C. § 552(b)(2), (b)(3), (b)(7)(c), (b)(7)(D) and (b)(7)(F), as well as, § 552a(j)(2) of the Privacy Act. Id. The released documents appear to contain information regarding the DEA's investigation into the Jarvis field of 1992. Id.

Unsatisfied with the DEA's response, plaintiff filed an appeal. Complaint at Att. XXIV. In his appeal, plaintiff stated that the exemptions were not warranted. Id. Moreover, plaintiff stated that it was his belief that the DEA was in possession of and/or has access to, more specific information concerning the 1992 Jarvis marijuana field investigation. Id. Plaintiffs' appeal was received by the Office of Information and Privacy and was assigned appeal number 03-2905.

---

[4] The referred pages contained information furnished by other agencies. Thus, pursuant to 28 C.F.R. §§ 16.4 and 16.42, access to those documents was referred to those agencies. Those agencies were the FBI, the United States Marshal Service, and the EOUSA. See Defendants' Motion for Summary Judgment, Ex. 3, Declaration of William C. Little, Jr., at 7-8 (hereinafter Little Declaration).

Complaint at Att. XXVI. On September 2, 2003, the Co-Director of the Office of Information and Privacy found that the DEA had properly withheld information that was protected from disclosure and affirmed the DEA's decision. Complaint at Att. XXVIII.

On August 15, 2003, the DEA released additional information to the plaintiff responsive to his original request. Complaint at Att. XXX. That information was contained five additional pages and was found to be partially exempt under 5 U.S.C. §§ 552(b)(2), (b)(7)(C), and (b)(7)(F) and 5 U.S.C. § 552a(j)(2) of the Privacy Act. Id. In addition, plaintiff received a notice from the EOUSA on June 30, 2003, stating that two pages of material were referred to them for review from the DEA. Complaint at Att. XXIII. That request was assigned request # 03-1850-R. Id. Upon review of those two pages, the EOUSA withheld both pages in full because they pertained to a third party other than Ronald S. Jarvis. Id.

Plaintiff appealed the EOUSA's decision to the Office of Information and Privacy. Complaint at Att. XXV. In his appeal, plaintiff asserted that the exemptions were not warranted because it was his belief that the EOUSA had documents in its possession that contain specific information regarding the 1992 Jarvis marijuana field investigations. Id. Plaintiffs' appeal was assigned appeal number 03-2921 on July 25, 2003. Complaint at Att. XXVII. On October 14, 2003, the Co-Director of Information and Privacy affirmed the withholding of these documents because they contained inter-office and intra-agency communications protected by the attorney work-product privilege and because they contain information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties. Id.

C.  Request # 02370-087 to FBI Field Office in Pittsburgh

7

Pursuant to the advice of FBI Headquarters, plaintiff filed his FOIA request for information about Mr. Jarvis' polygraph examination and FBI 302 forms to the Pittsburgh field office of the FBI. Complaint at Att. XIV, Ex. 2. That request was received on September 19, 2002. Complaint at Att. XVII. Subsequently, the Pittsburgh field office informed plaintiff that his request was assigned request # 02370-087 and that "a search of the automated indices to the central records system as maintained by the Pittsburgh office revealed no records responsive to your FOIA request." Id.

## III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere

8

allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

In a FOIA action, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced, [is identifiable], or is exempt from the Acts inspection requirements." Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (internal quotations omitted). However, the agency must conduct a reasonable search for responsive records and must establish that it has "made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested." Oglesby v. United States Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory and submitted in good faith." Miller v. United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985); Wickwire Gavin P.C. v. Defense Intelligence Agency, 330 F.Supp.2d 592 (E.D. Va. 2004).

## IV. Analysis

The purpose of the Freedom of Information Act, 5 U.S.C. § 552, "is to encourage public disclosure of information so citizens may understand what their government is doing." Office of the Capital Collateral Counsel v. Dept. of Justice, 331 F.3d 799, 802 (11th Cir. 2003). FOIA requires government agencies to disclose to the public any requested document unless the agency proves that

the document falls within one of nine statutory exemptions. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975). Because the purpose of the FOIA is to encourage disclosure, its disclosure requirements are construed broadly, its exemptions are construed narrowly, and the government bears the burden of proving a requested document is exempt. Dept. of Air Force v. Rose, 425 U.S. 352, 366 (1976). While the FOIA allows an agency to withhold information within one of the exemptions, it does not limit the agency's discretion to disclose such exempt information if it sees fit. Chrysler Corp. v. Brown, 441 U.S. 281, 293-294 (1979).

The Privacy Act also comes into play in this case. The Privacy Act provides in pertinent part that "[n]o agency shall disclose any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . (2) required under section 552 of the title [FOIA]." 5 U.S.C. § 552a(b)(2). "The privacy Act was passed in 1974 to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government and to outside individuals." Cochran v. United States, 770 F.2d 949, 954 (11th Cir. 1985). The Privacy Act was enacted in large part in response to concern over the impact of computer data banks on individual privacy. United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 766 (1989).

While the Privacy Act and the FOIA have contradictory purposes, the relationship between the two statutes is well-established: "the Privacy Act expressly defers to the mandatory disclosure requirements of the FOIA by prohibiting the nonconsensual release of personal information unless the information is required to be disclosed under the FOIA. The net effect [of § 552a(b)(2)] is to

10

permit disclosure where the FOIA requires it, but to prohibit disclosure where the FOIA allows the agency to refuse disclosure." Cochran, 770 F.2d at 954-955 (internal citation and quotation omitted).

As is often the case, the disputes in this case center around the scope of various FOIA exemptions. The Court will discuss generally the contours of each arguably applicable exemption, and then conduct a review of the defendant's claims for exemption, as required by 5 U.S.C. § 552(a)(4)(B). If the information falls within one of the statutory exemptions, the Court's inquiry is over and the FOIA does not require disclosure of that information. NLRB v. Sears, 421 U.S. at 147-148. In this case, the FBI Headquarters search of its records found no responsive documents. Additionally, the EOUSA and the DEA withheld documents, in whole or in part, pursuant to §§ 552(b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(D), (b)(7)(F) and § 552a(j)(2) of the Privacy Act.

A. Exemption (2)

Exemption 2 allows a government agency to withhold from disclosure materials "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "[T]he general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." Dept. of the Air Force v. Rose, 425 U.S. at 369-370. The Court considers whether the matter is one of merely internal significance, or concerns only routine matters, or entails administrative burden. Id. at 370. Generally, Exemption 2 is not applicable to matters which are of a genuine and significant public interest. Id. at 369. Information such as source symbols and file numbers may be withheld under Exemption 2. Branch v. FBI, 658 F.Supp. 204, 208 (D.D.C. 1987).

In this case, the DEA withheld information under Exemption 2. That information consists of "violator identifiers" such as G-DEP (Geographical Drug Enforcement Program) codes, informant

identifier codes, and NADDIS (Narcotic and Dangerous Drug Information System) numbers. See Little Declaration at 17-18. G-DEP identifier codes, informant identifier codes, and NADDIS numbers, are a part of the DEA's internal system of identifying information and individuals.[5] Id. at 17. There is no public interest in the release of the codes. Id. at 19. To the contrary, the release of G-DEP codes would allow suspects to decode the information contained in their DEA files, thereby enabling them to change their patterns and practices to avoid detection and apprehension. Id. at 19. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies is assigned for DEA internal use only. Id.

Other than a general statement that the exemptions claimed by the DEA are unwarranted, plaintiff makes no specific argument for the release of any of his records withheld under Exemption 2.[6] Therefore, the undersigned finds that the DEA has properly relied on exemption (b)(2) to redact its G-DEP codes, informant identifier codes, NADDIS numbers and other administrative procedures.

B. Exemption (3)

Section 552(b)(3) allows a governmental agency to withhold from disclosure materials which

---

[5] G-DEP codes are assigned to all DEA cases at the time the case is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity. Little Declaration at 17-18. NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to the DEA. Id. at 18. Informant identifier codes are assigned to DEA and other law enforcement officials and are used instead of their names in all DEA reports, memoranda, and other internal correspondence. Id.

[6] The Court notes that in his motion for summary judgment, plaintiff generally asserts that there is an "overriding public interest in the disclosure of material [in this case] because the information is necessary to shed any light on the unlawful conduct of any Government agency or official." Plaintiff's Summary Judgment Motion (Doc. 20-2) at 19 (citation and internal quotations omitted). However, other than this generalized and self-serving statement, plaintiff fails to be more specific or to provide any support for his position. See also Id. at 22-23 (where plaintiff asserts an incomprehensible public interest argument about using the news media to expose administrative secrecy).

are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The validity of this exemption has been recognized in recent years by the District of Columbia Circuit Court. See Lopez v. Dept. of Justice, 393 F.3d 1345 (D.C. Cir. 2002). In this case, the DEA, citing Rule 6(e) of the Federal Rules of Criminal Procedure, withheld information under Exemption 3.

Rule 6 of the Federal Rules of Criminal Procedure regulates the disclosure of matters occurring before a grand jury. In Lopez, the District of Columbia Court noted that "[t]his Court recognized long ago that requests for documents related to grand jury investigations implicate FOIA's third exemption, because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from disclosing a matter occurring before the grand jury." Lopez, at 1349 (internal quotations omitted). Moreover, the Court noted that "the relevant inquiry for this Court is whether disclosure of the information requested would "tend to reveal some secret aspect of the grand jury's investigation, such as matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of investigation, the deliberations or questions of jurors, and the like." Id. (quoting Senate of the Commonwealth of Puerto Rico v. DOJ, 823 F.2d 574, 582 (D.D.Cir. 1987)).

Plaintiff acknowledges that the Courts have unanimously held that Rule 6(e) of the Federal Rules of Criminal Procedure constitutes a statute under §552(b)(3). Plaintiff's Summary Judgment Motion (Doc. 20-2) at 16). However, plaintiff argues that "documents created for reasons independent of a grand jury investigation do not." Id. (citing Ruggiero v. United States Dept. of Justice, 257 F.3d 534, 549 (6TH Cir. 2001)). Nevertheless, plaintiff never explains how the exemption, as claimed by the DEA in this case, is unwarranted or inappropriate. Therefore, the undersigned finds that the DEA has properly relied on exemption (b)(3) to withhold information

which pertains to matters occurring before a grand jury.

C. Exemption (5)

Exemption 5 allows a government agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dept. of the Interior and Bureau of Indian Affairs, v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

Only those documents normally privileged in the civil discovery context are within the scope of Exemption 5. NLRB v. Sears, 421 U.S. at 148-149. In other words, documents that are not "obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work product, executive privilege) are protected from disclosure under Exemption 5." Grand Cent. P'ship, Inc., v. Cuomo, 166 F.3d 473, 481 (2d Cir. 1999) (internal quotations omitted). "Work product protects mental processes of the attorney, while deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. Klamath Water Users, 532 U.S. at 8-9 (internal citations and quotations omitted).

"The purpose of the deliberative process privilege is to allow agencies to freely explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." State of Missouri ex rel. Shorr v. United States Army Corps of Engineers, 147 F.3d 708, 710 (8th Cir. 1998). "The deliberative process privilege rests on the obvious realization that officials will not

communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decision by protecting open and frank discussion among those who make them within the Government." Klamath Water Users, 532 U.S. at 8-9 (internal citations and quotations omitted).

"Exemption 5 to the FOIA permits nondisclosure if the document in question is an inter- or intra-agency memorandum which is both predecisional and deliberative." Ex. rel. Shorr, 147 F.3d at 710. A predecisional document is one prepared in order to assist an agency decision-maker in arriving at his decision and which contains recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Id. A document is deliberative if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its function. Id. Therefore, "the key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Dudman Comm. Corp., v. Dept. of Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

Additionally, there is a distinction for Exemption 5 purposes between factual data and opinion data. Factual data must generally be disclosed, while opinion data is ordinarily exempt from disclosure. See EPA v. Mink, 410 U.S. 73, 89 (1973). Thus, "the deliberative process privilege does not protect purely factual material contained in privileged documents if the disclosure of such information would not reveal the nature of the deliberations." Judicial Watch, Inc. v. Dept. of Energy, 412 F.3d 125, 131 (D.C. Cir. 2005) (citing Mink at 87-88).

Here, the EOUSA seeks to withhold responsive materials under Exemption 5. Those materials consist of communications between the United States Attorney's Office and the Untied States Marshal Service. See Complaint at Ex. 1, Declaration of John W. Kornmeier (hereinafter Kornmeier Declaration) at ¶ 21. Thus, the EOUSA seeks to withhold those documents as deliberative process privileged records or as attorney work-product because they contain discussions regarding potential agreements with possible witnesses in anticipation of litigation or as part of actual litigation. In either case, plaintiff only generally asserts that this exemption claimed by the EOUSA is unwarranted. Plaintiff makes no specific argument for the release of any of the records withheld under Exemption 5. Therefore, the undersigned finds that the EOUSA has properly relied on exemption (b)(5) to withhold inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

## D. Exemption (7)(C)

Exemption 7(C) allows a government agency to withhold from disclosure "records or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." This exemption broadly includes the identity of suspects, witnesses and investigators. Safecard Services, Inc., v. Securities and Exchange Comm., 926 F.2d 1197, 1205 (1991) (citing Bast v. Dept. of Justice, 665 F.2d 1251, 1254 (D.C.Cir. 1981)).

The Fourth Circuit has found that the identity of FBI agents is not subject to disclosure. Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978). In reaching this decision, the Fourth Circuit explained that:

> [o]ne who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives. While the right of privacy to these FBI agents is perhaps minimal, we find that the public interest in the identification of the FBI agents who conducted the investigation . . . to be even less.

Id. However, the Fourth Circuit also recognized that "in a matter arousing great public interest, nondisclosure of these officials' identit[ies] might be overborne by the legitimate interest of the public." Id.

In this case, the EOUSA and DEA seek to withhold the names of law enforcement officers, employees and support staff under Exemption 7(C). Those documents were compiled as a result of a criminal investigation. Little Declaration at 21; Kornmeier Declaration at ¶ 15. Plaintiff does not assert that the identity of those individuals "arouses great public interest" so that nondisclosure is "overborne by the legitimate interest of the public." Therefore, the undersigned finds that the EOUSA and DEA have properly relied on exemption (b)(7)(C) to withhold the names of law enforcement officers, employees, and support staff.

E. Exemption (7)(D)

Exemption (7)(D) allows a government agency to withhold from disclosure "records or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information

17

compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."

A law enforcement agency may be a confidential source. See Keeney v. Federal Bureau of Investigation, 630 F.2d 114 (2d Cir. 1980). "To establish 'the confidentiality of the source,' . . . it is only necessary to show that the information was given under an express assurance of confidentiality or in circumstances where such an assurance could reasonably be inferred." Radowich v. United States Atty., Dist. of Maryland, 658 F.2d 957, 960 (4th Cir. 1981); see also United States Dept. of Justice v. Landano, 508 U.S. 165, 172 (1993). Further all information provided by a confidential source is exempted from disclosure. See Ortiz v. United States Dept. of Health & Human Services, 70 F.3d 729, 732 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996).

In this case, the DEA seeks to withhold information pursuant to Exemption 7(D). The DEA asserts that coded informants are individuals who have a continuing cooperative association with the DEA. Little Declaration at 23. In general, those individuals are expressly assured confidentiality in their identities and the information they provide to the DEA. Id. Here, the DEA is unable to show that the individuals in question were given an express assurance of confidentiality. Id. at 24. However, because such individuals are generally given such assurances, those assurances can reasonably be inferred in this case. Id.

The withholdings in this case are related to the debriefing of a coded informant in which the informant provides the DEA with information about the drug-related activities of Mr. Jarvis and several third parties. Little Declaration at 24. Some circuits have held that "serious and damaging allegations of misconduct that could initiate criminal investigations or lead to other serious sanctions

can reflect an implied assurance of confidentiality." Ortiz, 70 F.3d at 734. Therefore, even though the DEA cannot show that the information in this case was given under an express assurance of confidentiality, the undersigned finds that the circumstances support a finding of an implied assurance of confidentiality. Therefore, the DEA has properly relied on exemption (b)(7)(D) to withhold information which could reasonably be expected to reveal the identity of a confidential informant.

## F. Exemption (7)(F)

Section 552(b)(7)(F) exempts from disclosure "records or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." "DEA agents clearly fall within [exemption (b)(7)(F)] . . . DEA agents, whose job it is to stop . . . drug dealing, often through undercover work, would find their lives unnecessarily jeopardized if their identities were revealed in [the] context of [the underlying criminal] investigation." Fedrick v. United States Dept. of Justice, 984 F.Supp. 659, 665-666 (W.D.N.Y. 1997) (citation and internal quotations omitted).

In this case, the DEA has withheld the names of DEA special agents, Deputy U.S. Marshals, and state and local law enforcement officers under Exemption (7)(F). Little Declaration at 24. Those individuals routinely approach and associate with violators, who are often armed or who have violent tendencies, in a covert capacity. Id. at 25. The release of the identities of such individuals in the past has resulted in physical attacks, threats, harassment and even attempted murder. Id. Moreover, the public disclosure of these investigative personnel would have a detrimental effect on the success of the DEA and would therefore be harmful to the public interest. Id. Other than a

general statement that the exemptions claimed by the DEA are unwarranted, plaintiff makes no specific argument for the release of any of his records withheld under Exemption 7(F). Therefore, the undersigned finds that the DEA has properly relied on exemption (b)(7)(F) to withhold information which could reasonably be expected to endanger the life or physical safety of any individual.

G.  Exemption (j)(2) of the Privacy Act

Section (j)(2) of the Privacy Act authorizes agencies to exempt from disclosure criminal investigative records systems, provided that the principal function of the agency is the "enforcement of criminal laws, including police efforts to prevent, control or reduce crime or to apprehend criminals." 5 U.S.C. § 552a(j)(2). To implement its election to exempt criminal investigative systems, the agency must promulgate rules and give the reasons for the exemption. Id.

Here, the DEA cites Exemption (j)(2) of the Privacy Act to withhold responsive material found in its Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008 and its Operations Files, JUSTICE/DEA-011. Little Declaration at 9. Those systems are criminal investigative systems maintained by the DEA. Id. Pursuant to § 552a(j)(2), the Attorney General has promulgated rules exempting the IRFS and the Operations Files from the access provisions of the Privacy Act. See 28 C.F.R. § 16.98.

Because the records at issue in this case have been exempted from disclosure pursuant to § 552a(j)(2), as implemented by 28 C.F.R. § 16.98(c)(3) and (5), plaintiff has no right of access to these records. Accordingly, the DEA properly relied on exemption (j)(2) of the Privacy Act to withhold information contained within its IRFS records system and Operations Files.

H.  Adequacy of the Search

Although an agency is under a duty to conduct a reasonable search, Oglesby, supra, reasonableness is measured by the method of the search, not its results.  Cleary, Gottlieb, Steen & Hamilton v. HHS, 844 F.Supp. 770, 777, n. 4 (D.D.C. 1993).  Therefore, a search is not unreasonable simply because it produces no results.  Id.  The agency is not required to search every system of records, but only those systems in which responsive documents are likely to be located.  Oglesby, 920 F.2d at 68.  The adequacy of the search depends on the circumstances of the case, see Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir.  1990), and the FOIA does not require an agency to prove that all responsive documents have been located.  Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  In other words, the search "need only be reasonable; it does not have to be exhaustive."  Miller v. Dept. of State, 779 F.2d at 1383.

To establish that it has made a good faith effort to obtain the requested information, the agency must provide affidavits or declarations of the responsible agency officials.  Id.  Those affidavits must establish that the agency conducted its search using methods which can reasonably be expected to produce the information requested.  Oglesby, 920 F.2d at 68.  The search must have been made in good faith and the agency has the burden of demonstrating the adequacy of its search. Id.  The affidavits or declarations submitted by an agency to support the adequacy of its search are accorded their own presumption of good faith.  Carney v. DOJ, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1984).  In examining the adequacy of the search, the question is not whether any other responsive documents exist, but only whether the search conducted was adequate. Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1993).

Here, plaintiff objects to the adequacy of the defendant's search because he believes it has

additional documents responsive to his FOIA requests. Therefore, the Court will examine the adequacy of the search conducted by each agency, including the FBI, EOUSA and DEA.

### 1. Search of EOUSA Records

The Declaration of John W. Kornmeier states that the EOUSA located four pages responsive to plaintiffs' FOIA request. See Kornmeier Declaration at ¶ 6. Of those pages, one page was released in full and three pages were released in part. Id. Mr. Kornmeier is an attorney advisor with the EOUSA, United States Department of Justice. Id. at ¶ 2. Due to the nature of his official duties, Mr. Kornmeier is familiar with the procedures followed by the EOUSA in conducting a search of its records pursuant to an FOIA request. Id. at ¶ 3.

However, assuming *arguendo*, that Mr. Kornmeier is a "responsible agency official" for purposes of a FOIA request, Mr. Kornmeier has failed to set forth the methods and records systems used by the EOUSA to conduct a FOIA search. "In demonstrating the adequacy of its search . . . an agency may not rest on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure. Rather, the affidavit must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such record exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search. Ethyl Corp. v. EPA, 25 F.3d 1241, 1246-1247 (1994) (internal quotations omitted). Because Mr. Kornmeier's declaration does not set forth the necessary search details, the undersigned is unable to determine at this time whether the EOUSA conducted a reasonable and adequate search of its records in response to the plaintiff's FOIA request. Accordingly, the defendant is not entitled to summary judgment as to this issue.

## 2. Search of FBI Records

The Declaration of David M. Hardy states that the FBI failed to locate any material responsive to plaintiffs' request. See Complaint at Ex. 2 (hereinafter Hardy Declaration). David M. Hardy is the current Section Chief of the Record/Information Dissemination Section, Records Management Division, at the Federal Bureau of Investigation Headquarters in Washington, D.C. Hardy Declaration at 1. His declaration clearly explains in detail the FBI's system of records and how that system is searched in response to a FOIA request. Id. at 6-9. The Hardy Declaration also explains how the records systems were searched in response to plaintiffs' request and in response to this litigation. Id. at 9-10.

In this case, Mr. Hardy is a "responsible agency official." His declaration clearly sets forth in detail the methods and records systems used by FBI Headquarters to conduct a FOIA search. The undersigned believes that those methods can reasonably be expected to produce the information plaintiff requested and that the agency acted in good faith in conducting its search. Therefore, although the records search by the FBI Headquarters failed to produce any materials responsive to plaintiffs' FOIA request, that search was reasonable and adequate and the FBI is entitled to summary judgment as to this claim.

## 3. Search of DEA Records

The Declaration of William C. Little, Jr., states that the DEA identified 158 pages of material that was responsive to the plaintiff's FOIA request. See Little Declaration at 11. Of those pages, 67 pages were released to plaintiff in part, 10 pages were release in their entirety, and 14 pages were referred to other agencies, five of which were later released in part. Id. Moreover, plaintiffs' case

23

was reviewed again in preparation of this case and an additional 38 pages were released in part. Id. at 12. In his declaration, Mr. Little states that he is an attorney employed by the Department of Justice, DEA, and is assigned to the Office of Chief Counsel, Administrative Law Section. Id. at 1. As part of his responsibilities, Mr. Little reviews FOIA/PA requests and appeals for litigation purposes. Id. at 2. Mr. Little is also the DEA Privacy Officer and is familiar with the DEA's system of records and the procedures used for searching those records in response to FOIA requests. Id. at 3. Mr. Little's declaration clearly explains in detail the DEA's system of records and how that system is searched in response to a FOIA request. Id. at 9-11. The Little Declaration also explains how the records systems were searched in response to plaintiffs' request and in response to this litigation. Id. at 9-17.

In this case, Mr. Little is a "responsible agency official." His declaration clearly sets forth in detail the methods and records systems used by the DEA to conduct a FOIA search. The undersigned believes that those methods can reasonably be expected to produce the information plaintiff requested and that the agency acted in good faith in conducting its search. Therefore, although plaintiff believes that the DEA has additional materials responsive to his request, the undersigned believes that the DEA's search was reasonable and adequate and that the DEA is entitled to summary judgment as to this claim.

I. Segregability

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exemption portions." 5 U.S.C. § 552(b). Therefore, in considering a FOIA claim, a District Court has an affirmative duty to

24

consider the segregability issue. <u>Trans-Pacific Policing Agreement v. United States Customs Serv.</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In his motion for summary judgment, plaintiff states that the defendants have not sufficiently explained why the exempt material could not reasonably be segregated from the non-exempt material. Motion (Doc. 20-2) at 8-11.

1. <u>DEA</u>

The DEA examined each page of responsive material to determine whether any reasonable segregable information could be released. <u>Little Declaration</u> at 26. Pages were only withheld in their entirety where release of any information:

> (1) would result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business,
>
> (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable,
>
> (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or
>
> (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

<u>Id.</u>

Moreover, reasonable segregation involves considerable time and effort. <u>Little Declaration</u> at 26. Therefore, during segregation, a balance must be struck between the cost of processing the materials and the value of the words or phrases that could be released. <u>Id.</u> Here, the DEA only

withheld pages in their entirety when the responsive material was so intertwined with exempted material that it could not reasonably be segregated. Id. at 27-30. Accordingly, the undersigned believes that the DEA reasonably segregated all disclosable information.

2. EOUSA

Similar to the DEA, the EOUSA evaluated each page of responsive material for segregability. Kornmeier Declaration at ¶ 18. Pages were withheld in their entirety only where the EOUSA "determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole." Id. Accordingly, the undersigned believes that the EOUSA reasonably segregated all disclosable information.

J.  Referral of Records

In his Motion for Summary Judgment, the plaintiff argues that the referral of some of his records was not justified and resulted in improper withholding. In support of his position, plaintiff states that "[a]n agency possessing records that originated with another agency is ultimately responsible for processing the records and therefore 'cannot simply refuse to act on the ground that the documents originated elsewhere.'" See Plaintiff's Summary Judgment Motion (Doc. 20-2) at 11 (quoting McGehee v. CIA, 697 F.2d 1095, 1110 (D.C. Cir. 1983) and citing In re Wade, 969 F.2d 241, 247-248 (7th Cir. 1992)). However, plaintiff acknowledges that an agency may "consult" the originating agency as to whether exemptions apply. Id. (citing McGehee, 697 F.2d at 1111, n. 71). Here, plaintiff challenges the EOUSA's referral of his request to the FBI and the DEA's referral of his request to the EOUSA and the United States Marshal Service.

A review of the record shows that the EOUSA forwarded plaintiffs' request for FBI 302

forms to FBI Headquarters only after finding no materials responsive to that request. The EOUSA did not refer the request to justify withholding documents, but rather, forwarded the request to the agency most likely to have materials responsive to plaintiffs' request. Therefore, the forwarding of the request was to plaintiffs' benefit, rather than his detriment and there was no improper referral. Additionally, the DEA consulted the EOUSA and the United States Marshal Service because certain documents responsive to plaintiffs' request originated with those agencies. After consultation with those other agencies, the DEA withheld or released those pages accordingly. Therefore, there was no improper referral.[7]

K. Adequacy of the DEA's Vaughn Index

A Vaughn index "is a list which describes each document withheld by an agency with sufficiently detailed information to enable a district court to rule whether it falls within an exemption provided by FOIA." Ethyl Corp., 25 F.3d at 1244, n.1. Although there is "no set formula for a Vaughn index . . . the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).

Here, the DEA's Vaughn index has provided the court with a detailed analysis of each redaction and document withheld. See Little Declaration at Att. Y. Specifically, the DEA's Vaughn index describes the document type, the date of the document, for what purpose the document was created, who created the document, what material was deleted from the document, what exemption

---

[7] To the extent that the plaintiff argues that the FBI improperly referred documents, and seeks an *in camera* review of its records, plaintiff acknowledges that the FBI found no responsive documents. Plaintiff's Summary Judgment Motion (Doc. 20-2) at 13. Thus, there could be no referral of documents. Similarly, the court cannot conduct an *in camera* review of documents that do not exist.

was used to withhold the information, a general description of the information withheld, and why it falls under the exemption claimed. Id. The DEA "did more than recite the statutory requirements for each exemption that it claimed [and] went into as much detail as possible to describe the contents of the documents in question without revealing the information that FOIA is designed to protect." See Falwell v. Executive Office of the President, 158 F.Supp.2d 734, 738 (W.D.Va. 2001). Therefore, the Court has sufficient information to make a reasoned and informed decision as the DEA's compliance with the FOIA. Accordingly, the plaintiff's challenge to the adequacy of the DEA's Vaughn Index is without merit.[8]

## L. In Camera Review

Plaintiff urges the Court to conduct an *in camera* review of the redacted or otherwise withheld documents. However, an *in camera* review of the documents is not required simply because the plaintiff requests it. *In camera* review is discretionary. See 5 U.S. C. § 552(a)(4)(B); see also Simon v. United States Dept. of Justice, 796 F.2d 709, 710-711 (4th Cir. 1986). "*In camera* review is appropriate where the justifications for withholding are conclusory or not described in sufficient detail to demonstrate that the claimed exemption applies, or where there is evidence of agency bad faith such as where evidence in the record contradicts agency affidavits." See Falwell, 158 F.Supp.2d at 738 (citing Carter v. United States Dept. of Commerce, 830 F.2d 388, 392-393 (D.C.Cir. 1987)). As set forth in this Order, the defendant has adequately explained why the exempt

---

[8] To the extent that the plaintiff asserts that the FBI or the EOUSA should have filed a Vaughn Index, the undersigned disagrees. The FBI did not find any responsive records, therefore, no documents were withheld from plaintiff and there is no need for a Vaughn index. Additionally, the three pages released in part by the EOUSA were only missing the names of the law enforcement personnel involved with Mr. Jarvis' polygraph examination. The redaction of those names under Exemption (b)(7)(C) is clear from the record and a Vaughn Index is not necessary.

material could not reasonably be segregated from the non-exempt material. Moreover, the defendant has filed an appropriate Vaughn Index. Because the defendant has sufficiently demonstrated that the claimed exemptions apply, and because there has been no showing of bad faith, an *in camera* review of the documents is not necessary.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion for Summary Judgment (Doc. 19) be GRANTED except with respect to the limited issue of the adequacy of the search of the EOUSA records. It is further the undersigned's recommendation that the EOUSA be given an additional thirty days within which to file such documentation as it deems necessary to establish the adequacy of its search. Upon the timely filing of any such documentation by the EOUSA, the undersigned will determine the adequacy of its search and make a further Opinion/Report and Recommendation with respect to that remaining limited issue (adequacy of the search of the EOUSA records). It is further the undersigned's recommendation that plaintiffs' Motion for Summary Judgment (Doc. 20) be DENIED except with respect to the limited issue of the adequacy of the search of the EOUSA records and, with respect to that limited issue, determination of Plaintiff's summary judgment motion be continued pending the undersigned's further Opinion/Report and Recommendation.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the same to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge for the Northern District of West Virginia. Failure to timely file objections to this

Opinion/Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon the same. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record.

Dated: February 24, 2006.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE