**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TIMOTHY W. McCOY,**

     **Plaintiff,**

**v.**                **//**      **CIVIL ACTION NO. 1:04CV101
(Judge Keeley)**

**UNITED STATES OF AMERICA,**

     **Defendant.**

## ORDER AFFIRMING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS

On November 25, 2003, the pro se plaintiff, Timothy W. McCoy
("McCoy"), filed a civil rights complaint alleging that various
agencies of the federal government had improperly withheld
documents responsive to his Freedom of Information Act ("FOIA")
requests. Pending before the Court are two opposing motions: The
first is McCoy's motion for summary judgment; the second is the
defendant, the United States of America's (the "Government's"),
motion for summary judgment. Following referral by this Court,
United States Magistrate Judge John S. Kaull issued two
complimentary Reports and Recommendations ("R&R"s) recommending
that McCoy's motion be denied, and that the Government's motion be
granted. McCoy filed written objections to the recommendations
made in both R&Rs. After conducting a de novo review of those
portions of the R&Rs to which McCoy objected, see 28 U.S.C. §
636(b)(1), and United States v. Raddatz, 447 U.S. 667, 673 (1980),
the Court **AFFIRMS** the Magistrate Judge's Reports and
Recommendations, **DENIES** McCoy's motion for summary judgment, and

ORDER AFFIRMING R&Rs AND DISMISSING CASE
--------------------------------------------------------------

**GRANTS** the Government's motion for  summary judgment for the
reasons that follow.

## I. **Background**

### a. **Factual History**

In 1993, McCoy was convicted in this Court of operating a
continuing criminal enterprise (CCE) and conspiring to manufacture
and distribute marijuana, along with several related crimes, such
as money laundering, tax evasion, and suborning perjury. See United
States v. McCoy, 188 F.3d 504 (4th Cir. 1999).  On direct appeal,
the Fourth Circuit Court of Appeals vacated McCoy's conspiracy
conviction as a lesser-included offense of his CCE conviction, but
affirmed the remainder of McCoy's convictions.  Subsequently, after
McCoy challenged his convictions pursuant to 28 U.S.C. § 2255, this
Court denied his motion for collateral relief.  The Fourth Circuit
then dismissed the appeal of that decision.

Following the dismissal of McCoy's collateral appeal, he
discovered that Ronald Shannon Jarvis ("Jarvis") had been debriefed
and given a polygraph examination by an Assistant United States
Attorney on matters McCoy believes to be relevant to his
convictions.  McCoy asserts that Jarvis made statements during that
debriefing and examination which exonerated McCoy from any
involvement in the "Jarvis [marijuana] field of 1992."  Further,
McCoy argues that Jarvis' allegedly exculpatory statements were

2

true since the Court found that Jarvis had fully cooperated with the United States when he was sentenced following his conviction for manufacturing marijuana on October 19, 1999.

McCoy contends that the truthful information obtained from the polygraph and debriefing of Ronald Shannon Jarvis likely proves that McCoy is innocent of the crimes for which he is now incarcerated. Therefore, he seeks copies of the transcripts and notes from both the polygraph examination and Jarvis' debriefing. McCoy believes that he is entitled to such information under FOIA, and that various government agencies responded improperly to his prior requests for such information, including, the Executive Office for the United States Attorney ("EOUSA"), the Drug Enforcement Agency ("DEA"), and the Federal Bureau of Investigation ("FBI").

**b. Procedural History**

On November 25, 2003, McCoy filed a document in his criminal case entitled "After Denial of Appeal No.: 02-1388 & No.: 02-1389 Movant Brings a Motion Requesting Leave of the Court to Seek Judicial Review of FOIA/PA Appeal Denial Pursuant to U.S.C. Section 552(a)(4)(B)." The Court construed that request as a civil rights complaint and directed the Clerk to open a civil case on McCoy's behalf. Pursuant to that Order, the instant case was opened on May 25, 2004. McCoy then paid the filing fee on June 2, 2004, and the Government answered the complaint on January 24, 2005.

3

## ORDER AFFIRMING R&Rs AND DISMISSING CASE

On November 8, 2005, the Government timely filed a motion for summary judgment, asserting that no genuine issue of material fact existed as to the method and scope of the agencies' respective responses to McCoy's FOIA requests.  On December 5, 2005, McCoy responded by filing an opposing motion for summary judgment, asserting various arguments relating to the adequacy of the respective agencies' searches for responsive material and contesting the application of those agencies asserted exemptions. By Order of this Court, on December 6, 2005, the motions were referred to Magistrate Judge Kaull for initial screening and a report and recommendation.

On February 24, 2006, the Magistrate Judge issued an R&R recommending that the Government 's motion be granted and that McCoy's motion be denied, except with respect to the limited issue of whether the EOUSA had adequately searched its records in compliance with FOIA prior to responding to McCoy's requests. Given that finding, Magistrate Judge Kaull also recommended that the EOUSA be given thirty days to file documentation as it deemed necessary to establish the adequacy of its search.

On March 7, 2006, McCoy filed written objections to the Magistrate Judge's initial R&R.  On March 22, 2006, the Government responded to the R&R by submitting the declaration of Chris Zumpetta-Parr, which set forth the system search procedure that was

4

used by the EOUSA in gathering the documents it deemed responsive to McCoy's FOIA requests.

On May 22, 2006, Magistrate Judge Kaull issued a "Report and Recommendation on the Limited Issue of the Adequacy of the EOUSA's Search" recommending that the Government 's motion for summary judgment be granted "with respect to whether or not the EOUSA conducted an adequate search of its records in response to [McCoy's] FOIA requests." (Doc. No. 26 at 3.) On June 1, 2006, McCoy filed a written objection to the supplemental R&R.

## II. **Facts Relevant to Review**

Prior to filing his civil rights complaint, McCoy had made a number of FOIA requests to various governmental agencies, including the EOUSA, the DEA, and the FBI for materials pertaining to the 1992 Jarvis marijuana field investigation. Each of those agencies responded to McCoy's requests, producing certain relevant materials, if any existed, while claiming the exemption of others.

In McCoy's request to the EOUSA, he specifically asked for information pertaining to:

> (1) The two polygraph examination[s] which were administered to Ronald S. Jarvis on or about Thursday/January 6, 2000, at the (Harrison County Correctional Center), which included but is not limited to:
> > A. The <u>questions</u> posed to Ronald Jarvis in the two polygraph examination[s].
> > B. The <u>answers</u> of Ronald S. Jarvis to the questions posed in the polygraph[s].
> > C. The <u>results</u> from the two polygraph examination[s].

5

> D. Any/all <u>observation[s]</u>, <u>report[s]</u>,
> <u>conclusion[s]</u> etc...

(2) All <u>FBI 302 Forms</u> concerning the <u>Jarvis</u> field of
1992.
<u>See</u> Complaint at Att. II.

Included in McCoy's request was a "privacy waiver" signed by Jarvis

allowing his personal information to be released to McCoy and an

affidavit by Jarvis stating that a polygraph had been administered

to him on January 6, 1999[1] and it that contained information

confirming that McCoy had no involvement in the "Jarvis field of

1992."

The EOUSA responded to McCoy's request on December 31, 2001,

by releasing four pages of relevant material, one page in full and

three pages in part. The three pages that were released in part

combine to form a copy of a report outlining the results of Jarvis'

polygraph examination. In that disclosure, the name of the

investigating officer and the name of the polygraph examiner were

redacted. Additionally, in its response, the EOUSA noted that

Jarvis had been administered only one polygraph examination and

that no records indicated any FBI involvement in the matter.

---

[1] While McCoy's FOIA request to the EOUSA sought documentation of Jarvis'
"January 6, 2000" polygraph examination, Jarvis' affidavit indicates he was
polygraphed on January 6, 1999. This inconsistency is of no moment, however, as
the EOUSA's response indicates that all documents relevant to "the subject
polygraph of Ronald Jarvis" were identified and disclosed or withheld in
accordance with the exemptions discussed *infra*. (<u>See</u> Doc. 19 Gov. Ex. 1.)

**ORDER AFFIRMING R&Rs AND DISMISSING CASE**

Nonetheless, the EOUSA forwarded McCoy's request for "FBI 302" forms to the FBI. On January 22, 2003, the FBI responded by informing McCoy that no relevant records had been obtained from FBI headquarters and advising him to file a request directly with specific field offices for an additional check.

Unsatisfied with the responses, McCoy filed a combined appeal to the Office of Information and Privacy in Washington, D.C., asserting that the agencies' claimed exemptions were not applicable because Jarvis had signed a release and had filed an affidavit authorizing the release of his information to McCoy. McCoy's appeal concerning the FBI's responses was denied on August 12, 2002, and his appeal regarding EOUSA was denied on September 30, 2002, when the Co-Director of the Office of Information and Privacy found that the only information withheld was protected from disclosure under 5 U.S.C. § 552(b)(7)(c).

Shortly before the denial of his EOUSA appeal, McCoy, acting on the advice of FBI headquarters, filed a request with the Pittsburgh field office of the FBI. The FBI received that request on September 19, 2002, and subsequently informed McCoy that a search had produced no records related to the request.

On June 11, 2003, the DEA responded to McCoy's request by releasing 77 pages, withholding 67 pages, and referring 14 pages of documentation to another agency for review. The released documents

appear to contain information regarding the DEA's investigation into the Jarvis marijuana field.   Unsatisfied with the DEA's response, McCoy  filed an appeal in the Office of Information of Privacy that was denied on September 2, 2003, based on exemptions to FOIA disclosure found at 5 U.S.C. §§ 552(b)(2), (b)(3), (b)(7)(C), (b)(7)(D) and (b)(7)(F), as well as 5 U.S.C. § 552a(j)(2) of the Privacy Act.

On June 20, 2003, McCoy received further notice from the EOUSA informing him that two pages of potentially responsive material referred to it for review by the DEA was being withheld because both pages pertained to a third party other than Jarvis.   McCoy appealed that decision to the Office of Information and Privacy, which on October 14, 2003, denied the appeal because the documents contained inter-office and intra-agency communications protected by the work-product privilege, and also contained information compiled for law enforcement purposes.

Finally, on August 15, 2003, the DEA released five additional pages it deemed responsive to McCoy's original request.  The agency found those pages to be partially exempt, however, under 5 U.S.C. §§ 552(b)(2), (b)(7)(C), and (b)(7)(F) and 5 U.S.C. § 552a(j)(2) of the Privacy Act.

ORDER AFFIRMING R&Rs AND DISMISSING CASE

### III.   REPORT AND RECOMMENDATION

In his February 24, 2006 R&R, Magistrate Judge Kaull provided an overview of how the Freedom of Information Act and the Privacy Act applied to the facts of the case.   That overview generally discussed the purpose of FOIA – to encourage public disclosure of information so citizens may understand what their government is doing – and the purpose of the Privacy Act – to prevent the dissemination of personal information.  Magistrate Judge Kaull then explained how the two acts work together and examined each of McCoy's FOIA requests and the Government 's respective responses in light of the purposes of those Acts to determine whether responses under review were adequate and if the stated exemptions were valid under the applicable law.

### a.   Exemptions

#### 1.   5 U.S.C. § 552(b)(2)

Magistrate Judge Kaull first addressed 5 U.S.C. § 552(b)(2)[2], ("Exemption 2"), and analyzed its application to the DEA's response to McCoy's FOIA request.  He noted that the purpose of Exemption 2, generally, is to relieve government agencies from the burden of producing documents for public inspection that contain matters that the "public could not reasonably be expected to have an interest

---

[2]  5 U.S.C. § 552 (b) This section does not apply to matters that are – (2) related solely to the internal personnel rules and practices of an agency.

9

**ORDER AFFIRMING R&Rs AND DISMISSING CASE**

in." <u>Dept. of the Air Force v. Rose</u>, 425 U.S. 352 at 369-70 (1976). Magistrate Judge Kaull further noted that information such as source symbols and file numbers may be withheld under Exemption 2. <u>Branch v. FBI</u>, 658 F. Supp. 204, 208 (D.D.C. 1987.)

In its response to McCoy's FOIA requests, the DEA withheld information that consisted of "violation identifiers" such as G-DEP (Geographical Drug Enforcement Program) codes, informant identifier codes and NADDIS (Narcotic and Dangerous Drug Information System) numbers. Upon analysis, Magistrate Judge Kaull found that there was no public interest in the release of such codes and that the codes were part of the agency's internal system of identifying information and individuals. Ultimately, he concluded that the DEA had properly relied on Exemption 2, and that exclusion of the various codes was proper.

**2. 5 U.S.C. § 552(b)(3)**

Next, Magistrate Judge Kaull addressed 5 U.S.C. § 552(b)(3)[3], ("Exemption 3"), and analyzed its application to the DEA's response to McCoy's FOIA request. He examined Exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, noting

---

[3]  5 U.S.C. § 552 (b) This section does not apply to matters that are — (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

that Rule 6(e) prohibits government attorneys and others from disclosing a matter before the grand jury. Lopez v. Dept. of Justice, 393 F.3d 1345 (D.C. Cir. 2002). While McCoy argued that documents created for reasons independent of a grand jury investigation do not warrant protection under Exemption 3, Magistrate Judge Kaull found that McCoy had provided no explanation as to why the exemption, as claimed by the DEA, was unwarranted or inappropriate in this case. Thus, Magistrate Judge Kaull concluded that the DEA had properly relied on Exemption 3 to withhold information pertaining to matters occurring before a grand jury.

### 3.  5 U.S.C. § 552(b)(5)

Magistrate Judge Kaull then addressed 5 U.S.C. § 552(b)(5)[4], ("Exemption 5"), and analyzed its application to the EOUSA's response to McCoy's FOIA request. Exemption 5 to the FOIA "permits nondisclosure if the document in question is an inter- or intra-agency memorandum which is both predecisional and deliberative." State of Missouri ex rel. Shorr v. United States Army Corps of Engineers, 147 F.3d 708, 710 (8th Cir. 1998). In his R&R, Magistrate Judge Kaull outlined what constitutes a predecisional document and a deliberative document. He also indicated that while

---

[4]  5 U.S.C. § 552 (b) This section does not apply to matters that are - (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

opinion data is protected, factual data is not protected by Exemption 5.

The EOUSA claimed Exemption 5 on materials consisting of communications between the United States Attorney's Office and the United States Marshal Service regarding potential agreements with possible witnesses in anticipation of litigation or as part of actual litigation. Upon review, Magistrate Judge Kaull found that McCoy had not specifically argued for the release of any of the records withheld under Exemption 5. Ultimately, he concluded that the EOUSA had properly relied on 5 U.S.C. § 552(b)(5) to withhold inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

### 4.   5 U.S.C. § 552(b)(7)(C)

Next, Magistrate Judge Kaull addressed 5 U.S.C. § 552(b)(7)(C)[5], ("Exemption 7(C)"), and analyzed its application to the EOUSA and DEA's responses to McCoy's FOIA requests. Exemption 7(C) exempts the identity of suspects, witnesses and investigators, <u>Safecard Services, Inc., v. Securities and Exchange Comm.</u>, 926 F.2d 1197, 1205 (D.C.Cir. 1991). The Magistrate Judge

---

[5]  5 U.S.C. § 552 (b) This section does not apply to matters that are - (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

noted, however, that in matters of great public interest, the nondisclosure of such identities might be outweighed by the legitimate interest of the public.  Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978).

Here, McCoy did not assert that the identity of those individuals claimed exempt by the EOUSA and the DEA would arouse great public interest sufficient to outweigh their nondisclosure under the exemption.  Thus, Magistrate Judge Kaull found that the EOUSA and the DEA had properly relied on 5 U.S.C. § 552(b)(7)(C) to withhold information pertaining to the identity of certain individuals.

### 5.  5 U.S.C. § 552(b)(7)(D)

Magistrate Judge Kaull then addressed 5 U.S.C. § 552(b)(7)(D)[6], ("Exemption 7(D)"), and analyzed its application to the DEA's response to McCoy's FOIA request.  Exemption 7(D) exempts the identity of confidential informants and all information provided by them under an express assurance of confidentiality or

---

[6] 5 U.S.C. § 552 (b) This section does not apply to matters that are – (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

in circumstances where such an assurance could be reasonably inferred. <u>Radowich v. United States Atty., Dist. of Maryland</u>, 658 F.2d 957, 960 (4th Cir. 1981).

In its response, the DEA claimed Exemption 7(D) for information regarding the drug-related activities of Jarvis and several third parties that it had obtained during the debriefing of a coded informant. The Magistrate Judge found that the circumstances of that debriefing implied an assurance of confidentiality, such that the DEA could properly rely on 5 U.S.C. § 552(b)(7)(D) to withhold the identity of the coded informant and the information provided by him or her.

### 6. 5 U.S.C. § 552(b)(7)(F)

Magistrate Judge Kaull also addressed 5 U.S.C. § 552(b)(7)(F)[7], ("Exemption 7(F)"), and analyzed its application to the DEA's response to McCoy's FOIA request. Exemption 7(F) protects the names of DEA special agents, Deputy U.S. Marshals, and state and local law enforcement officers. <u>Frederick v. United States Dept. of Justice</u>, 984 F. Supp. 659, 665-666 (W.D.N.Y. 1997). The Magistrate Judge noted that the release of such names could

---

[7]  5 U.S.C. § 552 (b) This section does not apply to matters that are — (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (F) could reasonably be expected to endanger the life or physical safety of an individual.

result in physical harm, and could also have detrimental effects on the success of the DEA's operations.

In his R&R, the Magistrate Judge found that McCoy had failed to argue why the DEA's application of Exemption 7(F) to certain materials was unwarranted. Accordingly, he found that the DEA properly relied on 5 U.S.C. § 552(b)(7)(F) to withhold information which could reasonably be expected to endanger the life or physical safety of an individual.

### 7.   5 U.S.C. § 552a(j)(2) of the Privacy Act

Magistrate Judge Kaull likewise addressed 5 U.S.C. § 552a(j)(2)[8], ("Exemption j(2) of the Privacy Act"), and analyzed its application to the DEA's response to McCoy's FOIA request. Exemption j(2) of the Privacy Act exempts from disclosure criminal

---

[8]   5 U.S.C. § 552a(j) General Exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—
(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

investigative systems, provided that the principal function of the agency is the enforcement of criminal laws.

Here, the DEA cited to Exemption (j)(2) of the Privacy Act to withhold responsive material found in its Investigative Reporting and Filing System (IRFS), and its Operations Files, and the Magistrate Judge noted that the Attorney General has promulgated rules exempting IRFS and the Operations Files from the access provisions of the Privacy Act. See 28 C.F.R. § 16.98. Thus, Magistrate Judge Kaull found that the DEA had properly relied on Exemption j(2) of the Privacy Act to withhold its IRFS records system and Operations Files from disclosure.

## b. Adequacy of the Search

Following his examination of the agencies' claimed exemptions from disclosure, Magistrate Judge Kaull then examined what is required of a governmental agency to conduct an "adequate" search of its records in response to a FOIA request. In determining adequacy, the focus is on the reasonableness of the search, where reasonableness is measured by the method of the search, and not its results. Cleary, Gottlieb, Steen & Hamilton v. HHS, 844 F. Supp. 770, 777 (D.D.C. 1993). Futhermore, an agency must make a good faith effort in its search to obtain requested information, and must provide affidavits or declarations of the responsible agency

16

officials to demonstrate that such an effort was made.    <u>Miller v.</u>
<u>Dept. Of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985).

    After discussing the standard required to achieve an adequate
FOIA search, the Magistrate Judge analyzed each agency's response
to McCoy's requests for adequacy.

### 1.  EOUSA Records

    Magistrate Judge Kaull first reviewed a declaration by a Mr.
Kornmeier, an attorney advisor with the EOUSA, United States
Department of Justice, that indicated the EOUSA had located four
pages responsive to McCoy's FOIA request.  Magistrate Judge Kaull
found, however, that the declaration did not provide a reasonably
detailed discussion of the search terms, the type of search
performed, or an indication that all files likely to contain
responsive materials were searched.  Accordingly, he concluded that
the Government was not entitled to summary judgment with regard to
the adequacy of the EOUSA's search.

### 2.  FBI Records

    Magistrate Judge Kaull next reviewed the declaration of David
M. Hardy, the current Section Chief of the Record/Information
Dissemination Section, Records Management Division, at the FBI
headquarters in Washington, D.C., and found that the declaration
clearly detailed the FBI's system of records and how that system is
searched in response to a FOIA request.    Furthermore, the

17

declaration explained how the records system had been searched in response to McCoy's request, and also in response to this litigation. Because Mr. Hardy is a responsible agency officer, and because his declaration set forth the methods and records system utilized by the FBI, Magistrate Judge Kaull concluded that the FBI's search was reasonable and adequate and that the Government was entitled to summary judgment on the issue.

### 3.  DEA Records

Magistrate Judge Kaull also reviewed the declaration of William C. Little, Jr., an attorney employed by the Department of Justice, DEA, and assigned to the Office of Chief Counsel, Administrative Law. Mr. Little is also the DEA Privacy Officer and is familiar with the DEA's system of records and the procedures for searching them.  The Magistrate Judge found that the declaration clearly detailed the DEA's system of records and how that system is searched in response to a FOIA request.  Furthermore, the declaration explained how the records system was searched in response to McCoy's request and in response to this litigation. Because Mr. Little is a responsible agency officer, and because his declaration set forth the methods and records system utilized by the DEA, Magistrate Judge Kaull concluded that the search was reasonable and adequate, and that the Government was entitled to summary judgment on the issue.

## c.  Segregability

Next,  Magistrate  Judge  Kaull  examined  the  issue  of segregability and the FOIA requirement that if a record contains information  that  is  exempt  from  disclosure,  any  "reasonably segregable" information, must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined" with exempted portions. 5 U.S.C. § 552(b).  In his motion, McCoy argued that the respective agencies' responses to his FOIA requests did not sufficiently explain why exempt material could  not  reasonably  be  segregated  from  non-exempt  material. Accordingly, the Magistrate Judge addressed each agency's response to McCoy's argument.

### 1.  DEA

Magistrate Judge Kaull again reviewed the declaration of Mr. Little, which outlines multiple alternative reasons why pages were withheld  from  the  DEA's  response  in  their  entirety:  1)  that disclosure would yield no useful information; 2) that disclosure could  compromise  the  identity  of  confidential  sources  or information  provided  by  them;  3)  that  disclosure  would  be  an invasion of personal privacy; and 4) that disclosure would place the lives and safety of third parties in jeopardy.  Further, the DEA linked these reasons to specific FOIA exemptions appropriate for the subject documents and indicated that it had only withheld

pages in their entirety when the responsive material was so intertwined with the exempted material that it could not be reasonably segregated. Finding no evidence to the contrary, Magistrate Judge Kaull concluded that the DEA had reasonably segregated all disclosable information.

### 2. EOUSA

Magistrate Judge Kaull then reviewed the declaration of Mr. Kornmeier, and found that, like the DEA, the EOUSA had examined each page of responsive material for segregability. Further, Mr. Kornmeier's declaration indicates that, in this case, the EOUSA had only withheld documents in their entirety after determining that no meaningful portions could be released without destroying the integrity of the entire document. Accordingly, the Magistrate Judge found that the EOUSA had reasonably segregated all disclosable information.

### d. Referral of Records

Magistrate Judge Kaull also addressed McCoy's argument that the referral of some of his records to other agencies was not justified and had resulted in improper withholding. McCoy challenged the EOUSA's referral of his FOIA request to the FBI and the DEA's referral of his request to the EOUSA and the United States Marshal Service.

<u>**ORDER AFFIRMING R&Rs AND DISMISSING CASE**</u>

The Magistrate Judge found that the EOUSA had referred McCoy's request to the FBI because it included a specific request for "FBI 302" forms, which the EOUSA did not have.  Further, he found that the DEA's consultation with the EOUSA and United States Marshal Service before responding was proper because certain requested materials had originated from those agencies.  Moreover, subsequent to that consultation, the DEA withheld or released those pages accordingly.  As a result, Magistrate Judge Kaull found that there had been no improper referral on the part of the EOUSA or the DEA.

**e.  Adequacy of DEA'S Vaughn Index**

Magistrate Judge Kaull then examined the adequacy of the DEA's proffered Vaughn Index.  A Vaughn Index "is a list which describes each document withheld by an agency with sufficiently detailed information to enable a district court to rule whether it falls within an exemption provided by FOIA." <u>Ethyl Corp. v. U.S. EPA</u>, 25 F.3d 1241, n.1 (4th Cir. 1994).

Here, Magistrate Judge Kaull found that the DEA had provided the Court with a detailed analysis of each redaction and document withheld from its response to McCoy's FOIA requests.  The DEA's Vaughn Index describes the document type, the date of the document, the purposes for which the document was created, who created the document, what material was deleted from the document, what exemption was to be used to withhold the information, a general

21

ORDER AFFIRMING R&Rs AND DISMISSING CASE

description of the information withheld, and why that information
fell under the exemption claimed.

Ultimately, Magistrate Judge Kaull concluded that the DEA's
Vaughn Index went above and beyond what was required to allow the
Court and McCoy to "derive from the index a clear explanation of
why each document or portion of a document withheld is putatively
exempt from disclosure." Hinton v. Dept. of Justice, 844 F.2d 126,
129 (3rd Cir. 1988). Accordingly, he found that the DEA was fully
compliant with the FOIA, and that McCoy's challenge to the adequacy
of the index was without merit.

**f.   In Camera Review**

Finally, Magistrate Judge Kaull addressed McCoy's request that
the Court conduct an in camera review of the redacted and otherwise
withheld documents. He first explained that an in camera review is
discretionary and that it is appropriate "where the justifications
for withholding are conclusory or not described in sufficient
detail to demonstrate that the claimed exemption applies, or where
there is evidence of agency bad faith such as where evidence in the
record contradicts agency affidavits." Falwell v. Executive Office
of the President, 158 F.Supp.2d 734, 738 (W.D.Va. 2001)(citing
Carter v. United States Dept. of Commerce, 830 F.2d 388, 392-93
(D.C.Cir. 1987)). He then noted that the Government  had clearly
detailed why exempted material could not reasonably be segregated

from the disclosed material and that it had filed a proper Vaughn
Index. Thus, Magistrate Judge Kaull found that the Government had
effectively demonstrated why the agencies' various claims of
exemption were proper, and that absent a showing of bad faith, no
in camera review of the documents was necessary.

**g. Recommendation**

In conclusion, Magistrate Judge Kaull recommended that the
Government 's motion for summary judgment be granted except with
respect to the adequacy of the EOUSA's search of its records, that
McCoy's opposing motion for summary judgment be denied except with
respect to the adequacy of the EOUSA's search of its records, and
that the EOUSA be given thirty days to file documentation as it
deemed necessary to establish the adequacy of its search.

## IV.  MCCOY'S OBJECTIONS TO REPORT AND RECOMMENDATION

In his written objections to Magistrate Judge Kaull's R&R,
McCoy advances no specific objection to any of the findings of fact
or recommended conclusions of law. Rather, he objects generally to
"each and every Opinion/Report and Recommendation, absent the
Search of EOUSA Records." (Doc. No. 24 at 2). McCoy brings his
near blanket objection on two somewhat related grounds: 1) that the
Magistrate Judge failed to evaluate his briefings and arguments
under the appropriate standard of liberality applicable to pro se
complaints see Haines v. Kerner, 404 U.S. 519 (1972)(holding the

23

allegations in a <u>pro</u> <u>se</u> complaint "to less stringent standards than formal pleadings drafted by lawyers"); and 2) that the Magistrate Judge failed to advise McCoy, as a <u>pro</u> <u>se</u> litigant, "of his right under the summary judgment rule to file opposing affidavits to defeat a defendant's motion for summary judgment." <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978)(citing <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975)). Ultimately, McCoy asserts that once the less stringent standard applicable to the allegations in his complaint is applied, he will be entitled to summary judgment as a matter of law.

## V.   SUPPLEMENTAL REPORT AND RECOMMENDATION REGARDING THE ADEQUACY OF EOUSA'S SEARCH

On May 22, 2006, Magistrate Judge Kaull issued a supplemental report and recommendation after the EOUSA filed the declaration of Chris Zumpetta-Parr, a Paralegal Specialist in the Criminal Division of the United States Attorney's Office for the Northern District of West Virginia ("USAO/NDWV"). From December 2005 to the present, Zumpetta-Parr's duties have included serving as the FOIA Liaison between the USAO/NDWV and the EOUSA, making her responsible for coordinating with the EOUSA when responding to FOIA requests for records located in the USAO/NDWV. Upon review of Zumpetta-Parr's declaration, Magistrate Judge Kaull found that it detailed clearly the EOUSA's system of records and how that system is

24

searched in response to a FOIA request. Addtionally, the declaration explains how the records were searched in response to McCoy's FOIA request. Accordingly, the Magistrate Judge found that Zumpetta-Parr was a "responsible agency officer," that the EOUSA's search was reasonable and adequate, and that the Government should be granted summary judgment on the issue.

## VI. MCCOY'S OBJECTIONS TO SUPPLEMENTAL REPORT AND RECOMMENDATION ON ADEQUACY OF EOUSA'S SEARCH

In his written objections to the Magistrate Judge's supplemental R&R, McCoy objects to the finding that the EOUSA search was reasonable and adequate. He argues that the Zumpetta-Parr declaration does not contain a statement regarding a search for the specific polygraph examination he seeks. Based on his objection, McCoy asserts that he should be awarded summary judgment as a matter of law.

## VII. STANDARD OF REVIEW

"[A]ny individual findings of fact or recommendations for disposition by [a federal magistrate judge], if objected to, are subject to final de novo determination on such objections by a district judge, thus satisfying the requirements of Article III [of the Federal Constitution]." 28 U.S.C. § 636(b); Wimmer v. Cook, 774 F.2d 68, 73 (4th Cir. 1985); See also Fed. R. Civ. P. 74(b); U.S.C. Const. Art. 3 § 1, et seq.

**ORDER AFFIRMING R&Rs AND DISMISSING CASE**

### VIII.  DISCUSSION

First, McCoy asserts that Magistrate Judge Kaull failed to evaluate his pleadings under a standard of liberality appropriate for pro se petitioners.  The Court, however, finds that there is no evidence of such failure in the record.

"It is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)(citing Rice v. Olson, 324 U.S. 786 (1945), and Holiday v. Johnson, 313 U.S. 342 (1941)).  This is especially true in the context of pro se litigants. See Haines, 404 U.S. at 521 (holding the allegations in a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers").  This "liberal" approach to evaluating pro se pleadings is necessary to insure that technical pleading deficiencies do not defeat otherwise valid substantive claims from being addressed on their merits. Gordon, 574 F.2d at 1151.  The liberality rule, however, does not require a court to substantively assist a pro se complainant or bend law to his favor. See id. at 1152 (stating that "[a] district court is not required to act as an advocate for a pro se litigant").

26

## ORDER AFFIRMING R&Rs AND DISMISSING CASE

In this case, the Court's application of a "liberal" standard to McCoy's pleadings is clear from the record. After McCoy filed a document entitled "After Denial of Appeal No.: 02-1388 & No.: 02-1389 Movant Brings a Motion Requesting Leave of the Court to Seek Judicial Review of FOIA/PA Appeal Denial Pursuant to U.S.C. Section 552(a)(4)(B)," the Court broadly construed McCoy's allegations as giving rise to a civil rights complaint and directed the Clerk to open a civil case on his behalf. Moreover, in his R&Rs, the Magistrate Judge did not recommend dismissal of any of McCoy's claims on procedural grounds. Quite to the contrary, Magistrate Judge Kaull engaged in a painstakingly thorough analysis of the FOIA and the Privacy Act and how that law applied to the merits of McCoy's complaint and the parties' arguments for summary judgment. Accordingly, the Court finds McCoy's objection on liberality grounds to be meritless.

Next, McCoy asserts that the Magistrate Judge failed to advise him of his "right under the summary judgment rule to file opposing affidavits to defeat a defendant's motion for summary judgment." Gordon, 574 F.2d at 1151 (citing Roseboro, 528 F.2d 309). In Roseboro, a pro se petitioner brought a 42 U.S.C. § 1983 action against the Warden of the prison where he was incarcerated. Id. During the course of the litigation, the Warden moved for summary judgment and filed affidavits in support of his motion. Id. After

27

the petitioner failed to respond to the defendant's motion in any way, the district court granted the motion. Id.

On appeal, the Fourth Circuit reversed and remanded the district court's grant of summary judgment because nothing in the record of the case indicated that the pro se petitioner had been given "fair notice of the requirements of the summary judgment rule." Id. (quoting Hudson v. Hardy 412 F.2d 1091, 1094 (D.C.Cir. 1968). In so holding, the court found that a pro se litigant is entitled to the "reasonable safeguard" of being "advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." Id.

Unlike the pro se petitioner in Roseboro, McCoy clearly understood his right to respond to the Government 's motion for summary judgment in this case. In fact, he did so by filing an extensive and well-constructed opposing motion and memorandum for summary judgment to which nine (9) exhibits were attached. Further, McCoy filed his motion within an appropriate time-frame for response to the Government 's motion, and the Court referred both motions to the Magistrate Judge for initial screening and a report and recommendation. Given McCoy's timely and thorough response to the Government 's motion in the form of his own opposing motion, the Court finds that no "Roseboro" notice was

needed or warranted in this case, and that McCoy's objection on these grounds is meritless.

Finally, McCoy asserts that Magistrate Judge erred in finding that the EOUSA's records search procedures were reasonable and adequate. His objection is based on the lack of any mention in the Zumpetta-Parr declaration that a specific search for the questions and answers that constituted the Jarvis polygraph examination was conducted. Since a report evaluating the polygraph had previously been turned over, McCoy believes that the "actual polygraph remains unrevealed and has to be in the files." (Doc. No. 27 at 1.)

As noted earlier, in determining the adequacy of a FOIA search, the focus of the inquiry is on the reasonableness of the search, where reasonableness is measured by the method of the search and not its results. Cleary, Gottlieb, Steen & Hamilton v. HHS, 844 F. Supp. 770, 777 (D.D.C. 1993). Further, an agency must make a good faith effort in its search to obtain requested information. Miller v. Dept. Of State, 779 F.2d 1378, 1383 (8th Cir. 1985).

Here, the Magistrate Judge evaluated the information provided in the declaration of Chris Zumpetta-Parr, in her capacity as the FOIA liaison between the USAO/NDWV and the EOUSA. That declaration details the records keeping databases employed by the USAO/NDWV, and how those databases were searched by Zumpetta-Parr and others

in response to McCoy's specific FOIA requests. Included in McCoy's requests to the EOUSA was a demand for both the questions given and the answers provided during the Jarvis polygraph examination. That information, however, was not located in the EOUSA's files via the USAO/NDWV because "[u]pon completion of the search _all_ records responsive to Mr. McCoy's request were forwarded to the EOUSA." (Doc. No. 25-2 at 2 {emphasis in original}.)

Based on the Zumpetta-Parr declaration, the Magistrate Judge found the EOUSA's search to be reasonable and adequate. Upon _de novo_ review, the Court agrees, and finds that the EOUSA, via the USAO/NDWV, made a good faith effort using reasonable procedures to identify documents responsive to McCoy's FOIA request and then disclose the unexempted portions of those documents to McCoy. Thus, the Court finds McCoy's objection on this ground to be merit less.

## IX. CONCLUSION

In this case, Magistrate Judge Kaull conducted an exceptionally thorough evaluation of the parties' opposing arguments for summary judgment. After finding no genuine issue of material fact, in painstaking fashion he detailed why he recommended the grant of summary judgment for the Government as a matter of law. Upon _de novo_ review, the Court finds McCoy's objections to the Magistrate Judge's recommended findings to be

30

## ORDER AFFIRMING R&Rs AND DISMISSING CASE

merit less. Accordingly, the Court **AFFIRMS** Magistrate Judge Kaull's report and recommendation, (Doc. No. 23), and his supplemental report and recommendation, (Doc. No. 26), **GRANTS** the Government 's motion for summary judgment, (Doc. No. 19), and **DENIES** McCoy's motion for summary judgment, (Doc. No. 20). Therefore, the Court **DISMISSES** this case from its docket **WITH PREJUDICE.**

It is so **ORDERED.**

The Clerk is directed to mail a copy of this Order to the pro se plaintiff and transmit a copy of this Order to counsel of record and all appropriate agencies.

Dated: August ___*23*___, 2006.


_____
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE